## JAQUES *a.* GREENWOOD.

*New York Common Pleas ; General Term, February,* 1861. .

JUDGMENT.—PARTNERSHIP ASSETS.—ASSIGNMENT FOR BENEFIT OF
CREDITORS.

A judgment recovered against all the partners of a firm, process being served upon
all, imports in itself the existence of a partnership debt.

A general assignee for benefit of creditors of a partnership, under an assignment
which is declared fraudulent and void, cannot retain the assigned property for
the benefit of partnership creditors, against an individual creditor of one of the
partners. The rule that partnership property should be applied to the payment
of partnership debts in preference to the individual debts of the partner, is
founded on the rights of the other partners, and not those of creditors ; and if
this were not so, such assignee does not represent the creditors.

A judgment having been taken by default against a firm, they obtained a stay of
proceedings on the pretence that they had a defence to the action (which, how-
ever, they failed to show), and on the assurance of their attorney that they
would not make any assignment. Meanwhile they made an assignment for the
benefit of creditors, giving preferences, and thereby prevented the judgment-
creditors from realizing any thing upon their execution.

*Held,* that the assignment was void as against such judgment-creditors, as be-
ing made with intent to hinder and delay them.

This was a creditors' action, brought against B. Greenwood,
R. B. Greenwood, and R. W. Brewster, to set aside an assign-
ment made to R. B. Greenwood by the other defendants, on
December 26, 1854.

The plaintiffs recovered judgment against the defendants B.
Greenwood and Brewster, on December 13, 1854, by default,
for the sum of $1,026.80, founded on a note signed " B. Green-
wood & Co.," which was the partnership name of those defend-
ants. The defendants in that action obtained an order staying
proceedings on the judgment until a motion could be made to
set it aside. This motion was postponed by consent from time
to time, under the assurance of the defendants' attorney that
they would not make any assignment ; but meanwhile, without
informing their attorney, they did assign all their property to
R. B. Greenwood, for the benefit of creditors, giving preferences
which absorbed all their assets. When the motion came on for

a hearing, it was denied (see our report, 1 *Ante,* 230), and an execution issued on the judgment, which was returned unsatisfied, whereupon the plaintiffs commenced this action.

The cause was tried before BRADY, J., without a jury, who rendered judgment for the plaintiffs, setting aside the assignment as *against them only,* basing his judgment mainly upon the act of the defendants' attorney, in obtaining an extension of the stay of proceedings upon his assurance that no assignment would be made, which agreement the judge considered was binding upon the defendants, and the violation of which rendered the assignment fraudulent. On the trial of the cause, defendants alleged that the note on which judgment was recovered, was made by Greenwood for his own debt, and without the knowledge of his partners. This, however, was not set up in the answer.

From this judgment the defendants appealed.

*J. W. Edmonds & H. D. Van Orden,* for the appellants.—I. The plaintiffs' claim was an individual debt of B. Greenwood, and not a partnership liability. The partnership creditors, represented by the assignee, have a superior equity. (*Parsons' Merc. Law,* 185; White *a.* Carpenter, 2 *Paige,* 266; How *a.* Wyeth, 1 *Paige,* 125; Murray *a.* Murray, 5 *Johns. Ch.,* 150; Jackson *a.* Cornell, 1 *Sandf. Ch.,* 348; Wilder *a.* Keeler, 3 *Paige,* 167; Egbert *a.* Wood, *Ib.,* 517; Payne *a.* Matthews, 6 *Ib.,* 19; Hutchinson *a.* Smith, 7 *Ib.,* 26; Burtis *a.* Tisdale, 4 *Barb.,* 571; Allen *a.* Wells, 22 *Pick.,* 450; *Collyer on Partn.,* § 920; 1 *Story's Eq. Jur.,* § 675.) On the insolvency of a firm, its property is a trust-fund for partnership creditors, and an assignment of it for individual debts would be void. (Egberts *a.* Wood; Hutchinson *a.* Smith; Jackson *a.* Cornell, *supra;* Robb *a.* Stevens, 1 *Clarke,* 195; Grover *a.* Wakeman, 11 *Wend.,* 207.)

II. There is no fraud in law shown, and the court below erred in finding fraud in fact. There must be an intent shown to defraud *by making the assignment,* and not by some independent act. (Wilson *a.* Forsyth, 24 *Barb.,* 105.) Fraud is not to be presumed, and collusion was disproved.

III. The plaintiffs had no lien before the assignment was made.

*R. W. Stafford,* for the respondents.

BY THE COURT.—DALY, F. J.—The defendants did not set up, by their answer, that the judgment was upon a note given by Benjamin Greenwood for his individual debt, and were not entitled, therefore, to go into evidence to prove that fact; but even if they had pleaded it, by way of defence, it would have availed them nothing. The judgment was recovered against both partners, process having been served upon each, and such being the fact, the judgment itself imports the existence of a debt, for the payment of which both are jointly and severally bound. (*Smith's Action at Law*, 45; 3 *Bl. Com.*, 158.) The judgment being against both partners, their joint property could be levied upon and sold to satisfy it. The levy, in such a case, would not be upon the individual interest of each partner in the joint property, but upon the whole, founded upon their joint liability. A levy upon the individual interest of a separate partner is necessary only when his share or interest is to be reached, which can be ascertained only after the joint debts have been paid. If the plaintiffs, therefore, had not been prevented by the order to stay, they could have issued execution upon the judgment, and have had it satisfied by a sale of the joint property. Before the plaintiffs got rid of the order to stay, the two partners, Greenwood and Brewster, made a general assignment for the benefit of creditors, preferring certain creditors, among whom the plaintiffs were not included; and it is now insisted by their assignee, Richard B. Greenwood, as a defence to the action, that even if the assignment was made by the partners fraudulently, with an intent to hinder and delay, the plaintiffs are not entitled to the relief they ask, as the joint property must be first applied to the payment of the partnership debts. The rule, that partnership property is to be applied to the payment of partnership debts before it can be appropriated to the payment of the individual debt of a partner, is founded upon the reason that the other partner or partners are entitled to have it so applied, as the claim of an individual partner is necessarily limited to the interest which his debtor has in the joint property, which is an interest in the surplus after the joint debts have been paid. (*Ex parte* Crowder, 2 *Vern.*, 706; *Ex parte* Cook, 2 *P. Wms.*, 500; Twiss *a.* Massey, 1 *Atk.*, 67; West *a.* Skip, 1 *Ves. Sr.*, 239, 456; Jacky *a.* Butler, 2 *Ld. Ray.*, 871; Heydon *a.* Heydon, 1 *Salk.*, 392; Fox *a.* Hanbury, *Cowp.*,

445; Taylor *a.* Fields, 4 *Ves.*, 396; and note to Young *a.* Keighley, 15 *Ib.*, 560; Rex *a.* Sanderson, *Wightwick*, 50.)

Chancellor Kent (3 *Com.*, 64, 4 ed.) says that, "so far as partnership property has been acquired by means of partnership debts, those debts have, in equity, a prior claim," and that "the basis of the general rule·is that the funds are to be liable, upon which the credit was given." There is countenance for this view of the reason of the rule in what was said by Lord Hardwicke, in Twiss *a.* Massey (*supra*), and by Lord Rosslyn in Taylor *a.* Fields; but I think an examination of the cases will show that the true reason for it is the one above stated. Even the propriety of the rule itself has been doubted by Lord Eldon, in *Ex parte* Kensington (14 *Ves.*, 447), and in several of the States it has been repudiated after mature consideration. (Bell *a.* Newman, 5 *Sergeant & Rawle*, 78; Root *a.* Shepardson, 2 *Verm.*, 120; *Ex parte* Stebbins, *R. M. Charlton*, 77.)

But conceding that those who contracted with reference to the partnership relation, and whose property entered into and formed a part of the partnership stock, have a superior equitable claim over other joint-creditors, to have the partnership effects applied first to the satisfaction of their debts, it does not appear, from any thing in the case, that there are any such creditors; and if there were, the assignee, if the assignment is declared to be fraudulent, is not their representative, and neither he nor the insolvents can interpose on behalf of such creditors to prevent the property from being applied in payment of the plaintiffs' judgment. (Brewster *a.* Hammet, 4 *Conn.*, 540.) If there are such creditors, and they are entitled to have the joint property, which the plaintiffs seek to reach by setting aside the assignment, applied in the first place to the payment of their debts, they must interpose on their own behalf, before the assets finally pass out of the hands of the receiver to be appointed. It would appear, from the testimony of Tenbroeck, that the assignee was a creditor of the firm; but he was united in interest with the partner Hoppock, and both would have to unite in any application to the court to control the assets. When any such application is made, the question will arise, whether the creditor stands in such a relation; and if he does, the point can then be determined, whether he has any superior equity or not. As respects the position of parties in the present action,

it is sufficient to say, that if the assignment is declared to be fraudulent and void, the plaintiffs are entitled to have the assets applied to the satisfaction of their judgment, unless other parties interpose, and establish to the satisfaction of the court that they have a prior claim upon the whole fund.

The evidence to show that the assignment was made with a fraudulent intent, to hinder and delay the plaintiffs in the collection of their debt, was slight, but, in my judgment, sufficient to uphold the finding of the judge. If the defendants Greenwood and Brewster had no defence to the action upon the note, then their attempt to put in an answer, and, failing in that, the further proceedings upon their behalf by which the judgment was stayed until they were able to make an assignment, could have been for no other purpose but to hinder and delay the plaintiffs in the collection of their debt by a judgment and execution. If they had had a defence, it was in their power upon the trial to show it, at least sufficiently to warrant the presumption of good faith. They proved by the testimony of Mr. Quoid, that the note was received by him from Benjamin Greenwood, in payment of a contract made by Greenwood individually, for the building of a house, Mr. Quoid having previously received a check of the firm for a sum due upon this contract, which was paid; but this did not show that the note was made without the knowledge or assent of Brewster. On the contrary, the judge had a right to assume that it was with Brewster's knowledge and assent, as, in the answer which the defendants sought to put in to the action upon the note, and which was sworn to by Greenwood, they admitted in so many words, that they, " as partners, under the name of B. Greenwood & Co., made the promissory note in the complaint mentioned." The attorney says that they disclosed to him that the note was given by Benjamin Greenwood for his private debt, and that Brewster knew nothing about it; that Greenwood told him that the note was given with an understanding that the payees would not suffer any liens to be put on, but had violated their agreement by allowing liens to be created, and that he advised them they had a good defence—and yet the answer he put in for them set up no such defence. It admitted that the note was made by them as copartners, and did not set up any special agreement. The attorney also says that they knew nothing about his obtaining

the order to stay; but it is very manifest, from the testimony, that the order to stay was, like the attempt to put in an answer when they had no defence, part of a general scheme to delay the plaintiffs as long as possible in the collection of their debt. While this stay was pending, we find Benjamin Greenwood, two days after the partners had made a general assignment of all their property for the general benefit of their creditors, proposing to come over from New Jersey and offer to the plaintiffs, then ignorant of the assignment, a compromise, and his attorney writing to the attorney of the plaintiffs that, as Greenwood could not come, in consequence of the death of his sister, he must either adjourn or bring on the motion. The object had then been effected; they had kept off the plaintiffs as long as they could; and having made an assignment by which the plaintiffs were postponed until after the payment of the creditors they preferred, they were indifferent as to any further attempt to delay the judgment.

All these circumstances show that the design in making the assignment was to hinder and delay, and the judgment of the special term should be affirmed.